1   SARA J. KING (Cal. State Bar No. 299115)
2   PRO PER
    Email: sarakingproper@gmail.com
3   P.O. Box 8114
    Rancho Santa Fe, California 92067
4   Tel:    (949) 220-3666

5

6   In Pro Per for Defendant KING FAMILY LENDING LLC,

7

8                    **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

10

11  | LDR INTERNATIONAL LIMITED, a British Virgin Island corporation; | Case No.:  **8:23-CV-00257-DOC-JD(Ex)** |
    |---|---|
12  |                           Plaintiff, | **DEFENDANT KING FAMILY LENDING LLC'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT** |
13  |            v. | |
14  | SARA JACQUELINE KING, an individual, and KING FAMILY LENDING LLC, a California limited liability company; | **[FILED CONCURRENTLY WITH:** |
15  | | **1)  SARA JACQUELINE KING'S ANSWER TO COMPLAINT; AND** |
16  | | **2)  CROSSCLAIM AGAINST KAMRAN ABBAS-VAHID** |
17  |                        Defendants. | |
18  | | Assigned For All Purposes: |
19  | SARA JACQUELINE KING, an individual, and KING FAMILY LENDING LLC; | Hon. David O. Carter |
20  | | |
21  |            Cross-Claimant, | |
22  |            v. | |
23  | KAMRAN ABBAS-VAHID, an individual; and DOES 1 to 20, inclusive. | |
24  | | |
    |            Cross-Defendants. | |
25

26       Defendant King Family Lending LLC ("KFL"), by and through its undersigned Manager,

27  Sara J. King ("King"), hereby files its Answer and Defenses to the Complaint filed by LDR

28  International LDR ("Plaintiff") as follows:

                                    1

## PRELIMINARY STATEMENT

In answering the Complaint, KFL states that it is responding to allegations on behalf of itself only, even where the allegations pertain to alleged conduct by all Defendants.  KFL denies any and all allegations in the headings and/or unnumbered paragraphs in the Complaint.

## DEFENDANT KING FAMILY LENDING LLC'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

## THE PARTIES

In response to the specific allegations in the enumerated paragraphs in the Complaint, KFL responds as follows:

1. KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2. KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2

3. KFL admits that it is a California limited liability company formed on February 7, 2020, with its principal place of business in Orange County, California. KFL is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.

4. KFL admits that it became a licensed as a finance lender by the DFPI under license number 60-DBO-111951 effective November 17, 2020. KFL is without knowledge or sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 4.

5. KFL denies the allegations in Paragraph 5 and Paragraph 5 subsections a, b, c, d, e, f, g, h, and i.

//

//

ANSWER TO COMPLAINT                                        2

**JURISDICTION AND VENUE**

6.      To the extent Plaintiff has properly alleged the claims, KFL admits that this Court has jurisdiction as to KFL. KFL denies Plaintiff's entitlement to any relief. KFL is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6.

7.      To the extent Plaintiff has properly alleged the claims, KFL admits that this venue is proper as to KFL. KFL denies Plaintiff's entitlement to any relief.

**GENERAL FACTUAL ALLEGATIONS**

8.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9.

10.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.

11.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11.

12.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.      KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in allegations in Paragraph 17.

18.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21.     KFL denies that there were no third-party borrowers or loans to third-parties. KFL is without knowledge or information sufficient form a belief as to the truth of the remaining allegations in Paragraph 21.

22.     KFL denies the allegations in Paragraph 22.

23.     KFL denies the allegations in Paragraph 23.

24.     KFL denies the allegations in Paragraph 24.

25.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.     KFL denies the allegations in allegations in Paragraph 26.

## **FIRST CAUSE OF ACTION**
### **(Breach of Contract)**

27.     KFL reasserts and re-alleges its responses and defenses as set forth above in Paragraphs 1 through 26.

28.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

29.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

30.     KFL is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 29.

31.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30.

32.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

33.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.

34.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

35.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.

36.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

## SECOND CAUSE OF ACTION
### (Fraud)

37.     KFL reasserts and re-alleges its responses and defenses as set forth above in Paragraphs 1-36.

38.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

39.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37, and including Paragraph 37 subparagraphs A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, and T.

40.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.

41.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.

42.     KFL is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 40.

43.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

44.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

45.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.

46.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44.

47.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

48.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

## THIRD CAUSE OF ACTION
### (Civil Theft, Cal. *Penal Code* Section 496)

49.     KFL reasserts and re-alleges its responses and defenses as set forth above in Paragraphs 1-48.

50.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47.

51.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48.

52.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

53.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

54.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

55.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.

56.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

57.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

## FOURTH CAUSE OF ACTION
### (Account Stated)

58.     KFL reasserts and re-alleges its responses and defenses as set forth above in Paragraphs 1-57.

59.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

60.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56.

61.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57.

62.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58.

63.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

64.     KFL is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60.

//

//

//

## RESPONSE TO PRAYER FOR RELIEF

65.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 1.

66.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 2.

67.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 3.

68.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 4.

69.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 5.

70.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 6.

71.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 7.

72.     KFL denies that the Plaintiff is entitled to the relief numerated in Paragraph 8.

## RESPONSE TO DEMAND FOR JURY TRIAL

KFL admits that the Plaintiff has demanded a trial by jury on all issues so triable. Any allegation in Plaintiff's Complaint not heretofore specifically responded to is hereby denied.

## FIRST DEFENSE

Plaintiff's Complaint fails to state a claim against KFL upon which relief can be granted.

## SECOND DEFENSE

KFL asserts that it acted in good faith without intent to harm Plaintiff.

## THIRD DEFENSE

At all relevant times herein, the Plaintiff's alleged damages, which KFL denies exist, were aggravated by the failure of the Plaintiff to use reasonable diligence to mitigate the same. Therefore, Plaintiff's recovery, if any, should be barred or decreased by reason of its failure to mitigate alleged losses.

## FOURTH DEFENSE

Plaintiff's damages, if any, were not caused by KFL, but by another person or entity for whom or for which KFL is not responsible.

ANSWER TO COMPLAINT                                          8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **FIFTH DEFENSE**

KFL asserts that Plaintiff breached the implied warranty of good faith and fair dealing by acting unreasonably, and usurious in any and all contracts found to exist between KFL and Plaintiff.

## **SIXTH DEFENSE**

KFL asserts that Plaintiff has through representations or actions waived its right to sue, and therefore cannot sustain this action.

## **SEVENTH DEFENSE**

KFL asserts that Plaintiff has committed a wrongdoing, and this lawsuit is attempting to benefit from this wrongdoing.

## **EIGHTH DEFENSE**

Plaintiff cannot meet the requirements of Cal. Pen. Code § 496 and therefore not entitled to punitive or statutory damages.

## **RESERVATION OF DEFENSES**

KFL hereby reserves the right to amend its defenses to Plaintiff's Complaint, including, but not limited to, those defenses specifically set forth in Federal Rule of Civil Procedure 8(c), and as otherwise permitted by law if investigation discovery, and further information should warrant such amendment. KFL further reserves the right to request leave to join other parties as necessary.

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiff's complaint, KFL prays that:

(1)     Plaintiff's Complaint be dismissed in its entirety with prejudice, with all costs

ANSWER TO COMPLAINT                                    9

1  taxed against Plaintiff;

2      (2)    KFL be dismissed as a party to this action;

3      (3)    KFL recover such other and additional relief as the Court deems just and

4  appropriate.

5

6      Respectfully submitted March 28, 2023.

7

8

9      DATED: March 28, 2023          KING FAMILY LENDING LLC

10

11                                   / s / Sara J. King

12                                   _____
                                     SARA J. KING
13                                   MANAGER FOR KING FAMILY LENDING LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SARA J. KING (Cal. State Bar No. 299115)
PRO PER
Email: sarakingproper@gmail.com
P.O. Box 8114
Rancho Santa Fe, California 92067
Tel:     (949) 220-3666

In Pro Per for Defendants SARA J. KING and KING FAMILY LENDING LLC,

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| LDR INTERNATIONAL LIMITED, a British Virgin Island corporation;<br><br>     Plaintiff,<br><br>  v.<br><br>SARA JACQUELINE KING, an individual, and KING FAMILY LENDING LLC, a California limited liability company;<br><br>     Defendants.<br><br><br>SARA JACQUELINE KING, an individual, and KING FAMILY LENDING LLC;<br><br>     Cross-Claimant,<br><br>  v.<br><br>KAMRAN ABBAS-VAHID, an individual; and individual, and DOES 1 to 20, inclusive.<br><br>     Cross-Defendants. | Case No.:  **8:23-CV-00257-DOC-JD(Ex)**<br><br>**DEFENDANTS' CROSS-CLAIMS AGAINST KAMRAN ABBAS-VAHID FOR:**<br><br> 1. **CIVIL THEFT (CAL. PENAL CODE § 496)**<br> 2. **FRAUD**<br> 3. **CIVIL VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 637)**<br><br>**[FILED CONCURRENTLY WITH:**<br><br>1) **KING FAMILY LENDING LLC'S ANSWER TO COMPLAINT;**<br>2) **SARA JACQUELINE KING'S ANSWER TO COMPLAINT]**<br><br>**DEMAND FOR JURY**<br><br>Assigned For All Purposes:<br>Hon. David O. Carter |

1

Defendants and Cross-Claimants SARA J. KING (hereinafter "King") and KING FAMILY LENDING LLC, California limited liability company (hereinafter "KFL") for their Cross-claims hereby brings this action against Cross-defendant Kamran Abbas Vahid.

## THE PARTIES

1.     Cross-Claimant SARA J. KING ("KING") is a resident of the State of California and an attorney licensed to practice law in the State of California and District of Columbia.

2.     Defendant and Cross-Claimant KING FAMILY LENDING LLC ("KFL") is a limited liability company organized in the State of California.

3.     Cross-Defendant KAMRAN ABBAS-VAHID ("VAHID") is an individual who refers to himself by the alias "Kamran Pahlavi," (*see attached* Exhibit A as proof of VAHID's real identity). After living illegally in the United States for a period of four years, VAHID is now believed to be residing in Morocco, a country with which the United States does not have an extradition treaty. VAHID and KING were in a relationship for approximately 5 years, married on February 24, 2022, and separated in December 2023.

## JURISDICTION AND VENUE

4.     This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00, exclusive of interest, Cross-Claimants are citizens/residents of the State of California, and Cross-Defendant is a citizen of France.

5.     Venue is proper in this Court under 28 U.S.C. § 1391. A substantial part of the events or omissions that give rise to Cross-claimants' claims which occurred in the Central District of California.

## GENERAL FACTUAL ALLEGATIONS

6.      In January 2022, VAHID introduced KING to LAURENT REISS ("REISS"), owner of LDR INTERNATIONAL LIMITED ("Plaintiff" or "LDR") for purposes of investment for KFL.  VAHID and REISS had been friends for over 30 years, and VAHID, not having worked during KING and VAHID's entire 5-year relationship, wanted to build a business with KING and be a part of KFL. VAHID and REISS joined KING on a telephone call to discuss the details of the business. In order forREISS required that he earn 60% of profits, and KFL to retain 40%. KING and VAHID agreed, and thereafter, REISS loaned money to KFL in an amount of $605,000.00 for a period of 3 months, each loan with an average interest rate of 72% per year.

7.      In February/March 2022, KFL paid to LDR the interest earned on the loans, a total of approximately, $104,600.00. REISS had then informed to KING to retain the principal amount and to retain all additional interest earned by loans for later use by REISS to fund additional loans.

8.      As business dealings between KFL and REISS became regular, VAHID and REISS remained in communication regarding loans to be funded, VAHID verifying the validity of all loan deals, including certifying that collateral in connection with loan deals funded. REISS insisted that VAHID have full control of the back office, including all record keeping and accounting.  KING initially hesitated to allow VAHID to have such control over for multiple reasons, including:

    a.  Starting in 2019, VAHID misused and stole funds from KING on multiple occasions to pay for his ex-wives (of which, VAHID has three) children's, and even their dog's living expenses, including vacations to Miami to which he joined in on while KING remained in California working;

    b.  VAHID would constantly steal money from KING to pay for his ex-wife and child's life, without informing KING until KING looked at bank statements;

    c.  VAHID had no money of his own during the entire relationship with KING, nor did VAHID work during their 5-year relationship.  KING fully supported VAHID and even funded many of VAHID's failed businesses, including CBD

product creations, and even so much as two buildings in Long Beach (valued at a total of $5,000,000.00), California to start a legal cannabis company. VAHID gave up on all businesses when they got "tough" and instead of salvaging all the money KING had invested, played golf and tennis daily while KING worked; and

    d.  VAHID continuously pressured KING to get married during their entire relationship, and finally seduced KING into marrying on February 24, 2022; immediately thereafter, VAHID applied for a marriage-based green card. However, REISS insisted that if VAHID was not a part of the company, future dealings would not work. Thus, KING agreed to VAHID's 50% ownership and oversight of all back office responsibilities.

    9.    VAHID, on all occasions, verified and vouched to REISS all happenings in the business, including without limitation, validity of collateral, and funding of loans.

    10.    REISS would fund loan deals using multiple accounts owned by REISS, personally, and/or MCA BACKOFFICE LLC ("MCA").

    11.    On or about April/May 2022, loans funded by REISS defaulted and when KING instructed the assets to be sold, the person who was to sell the collateral, instead stole the collateral, leaving KFL with no returned money and missing assets.

    12.    KING told VAHID about the defaulted loans and stolen collateral (including a 2021 Mercedes Benz G Wagon, a boat, a watch, and a Maybach). VAHID warned KING not to communicate this to REISS because he would no longer fund deals.

    13.    VAHID was well aware that KING could win at slot machines and persuaded KING to try and win the money lost in the defaulted deals. KING was in love with VAHID and was worried he would leave her if she did not cooperate. KING cooperated with VAHID, and began playing slot machines. VAHID accompanied KING at the Wynn Las Vegas during the majority of KING's time in Las Vegas.

    14.    When KING would win large jackpots, VAHID would collect the cash directly

from KING in the high-limit slot room at the Wynn Las Vegas. VAHID began seeing how much KING could win, and VAHID forced by threatening KING he would leave her and tell REISS that KING was fully responsible, to not fund all loans presented to REISS, and to instead, use the funds to bet larger amounts to win bigger jackpots on the slot machines.

15.     When KING denied VAHID's demands, or did not give him the money from any winnings, VAHID would start fights with KING (*see attached* Exhibit B) and leave KING alone in Las Vegas and come back days later, apologizing and would seduce and intimidate KING to use funds from KFL to use to play slot machines so that VAHID could collect the cash. KING began to stress about wins and losses, continually playing under VAHID's direction.

16.     KING then began to realize that KFL could be expanded to Las Vegas, and began having meetings and becoming acquainted with high-limit players at multiple casinos for purposes of finding borrowers for KFL.

17.     KFL's business grew quickly in Las Vegas, and several loan deals were funded. During this time, KFL received multiple referrals for loans in California from referral partners, and continued to take loan requests from "referral partners" while building the business in Las Vegas.

18.     As the business grew, KING persistently requested that KFL pay to LDR its earnings and principal payments back as the loans paid off. REISS insisted to KING that the funds were to remain in KFL. REISS then discussed a formal partnership for LDR and KING, and on multiple occasions and in multiple emails. REISS and KING agreed that they were "partners" for purposes of KFL, however, REISS needed to figure out a way to document the partnership in a way that would avoid paying any taxes in the United States.

19.     REISS then insisted that a colleague of his from overseas should help with the back office, and build a "proper" spreadsheet and work with VAHID to handle back office matters. REISS further insisted that he put a team in place in California to take over KFL and that KING be used merely to "source deals."

20.     VAHID and REISS remained in direct communication, and VAHID continued

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

handling all back office duties in tandem with REISS's colleague and, including without limitation, verifying to REISS all loan deals and collateral (whether in Las Vegas or California). However, while in Las Vegas, VAHID spent the majority of his time shopping and getting massages and facials, and began failing at keeping up the back office of KFL.

21.     When KING raised her concerns to VAHID about the back office, KING and VAHID fought, and VAHID would seduce his way back in with KING. KING informed REISS of the issues, and REISS shrugged off the personal issues and demanded that the focus remain on KFL and would constantly contact KING to find more deals to fund.

22.     VAHID would continually manipulate KING and KING would follow VAHID's direction because she was in love with VAHID. VAHID told KING to buy him a Tesla Model X car ($120,000.00) among several other items, to which she complied.

23.     Thereafter, KING and VAHID took a trip to New York City to visit Cross-defendant VAHID's daughter for her birthday. During the trip, KING and VAHID got into a fight and KING left VAHID in New York City, and departed back to Los Angeles. While KING was in- flight from New York City to Los Angeles, VAHID contacted the Concierge at their apartment to instruct Concierge to allow someone to enter the apartment and take assets (including watches, jewelry, electric bicycles, and golf clubs, all owned by KING or in the custody of KFL.

24.     Upon KING's realization of the missing items, KING and VAHID got into a fight and KING emailed VAHID's immigration attorney and removed sponsorship for VAHID's marriage-based green card application.

25.     Thereafter, VAHID began making accusations against KING in a group chat text with REISS, alleging that KING stole money from KFL.

26.     KING denied such accusations to REISS and REISS attributed VAHID's outburst to VAHID's typical erratic behavior, VAHID begged KING to get back together and to re-instate his marriage-based green card and threatened KING that he would "throw [KING] under the bus" because he's a "prince" and KING was a "nobody" if she did not reinstate his green card

application.

27.     KING began to realize that she was being used and manipulated by VAHID, now from fear of threats made by VAHID that "[VAHID's] best friend of 30 years would believe [VAHID] over [KING]" and that VAHID would deny to REISS any involvement in any the accusations made in the group chat text. KING then emailed VAHID's immigration attorney and reinstated sponsorship for VAHID's marriage-based green card. Thereafter, REISS continued interest in KFL, and continued funding deals, in direct communication with VAHID.

28.     In November 2022, KING realized that VAHID manipulated and used KING for a green card (*see* Exhibit C) and got fed up with VAHID's threats and demands and emailed VAHID's immigration attorney informing him that she would not sponsor Cross-defendant VAHID's marriage-based green card application, under any circumstances and to remove the application once and for all.

29.     Thereafter, VAHID packed up his things, left KING and followed through with his threats to throw KING "under the bus." REISS then demanded that any amounts in the KFL accounts belonging to him, be returned to an account owned by MCA. KING and REISS had a video-conference whereby KING showed REISS the funds existed in the account. Thereafter, KING immediately wired from KFL to MCA $485,000.00, however, the wire failed because the account was being closed due to a large summed returned check from a borrower. KING immediately opened a new account, and VAHID wired $485,000.00 to MCA.

30.     VAHID then realized that KING began to tell people what was going on, and used the fear and the weak position KING was in to "pretend" to want to get back together, so long as KING would not tell REISS the involvement of VAHID so that he would not lose his friendship, and promised that he would protect KING because of the friendship between him and REISS.

31.     KING was scared and again seduced by VAHID's promise to move back in and restart their relationship, and VAHID would tell KING to practice what she should say and if KING failed to say what he wanted, VAHID would again threaten KING. During these conversations, VAHID without KING's knowledge, recorded KING to incriminate and turn the

parties who KING had been confiding in, against KING.

32.    Thereafter, VAHID pretended to move back into KING's apartment only to slowly steal from KING cash from the safe, and KING's designer clothing, only later to sell KING's clothing at The RealReal in Los Angeles, recently realized by KING when items were returned to VAHID and left at their apartment (*See* Exhibit D). Days later, VAHID, with the car packed up told KING he was heading to the store and later texted KING he was never coming back.

33.    KING is informed and believes and thereon alleges, that VAHID stored the stolen items at a friend's home in San Marino, California. Further, KING is informed and believes and thereon alleges that VAHID sold some or all of the items belonging to KING and KFL.

34.    VAHID then persuaded REISS alleging that KING was fully responsible for all failings of KFL and that Cross-defendant VAHID had no idea what was happening at any point during the time REISS and KFL operated together.

35.    In January 2023, Cross-defendant VAHID (although, a citizen of France) fled to Morocco, a country with which the United States has no extradition treaty.

36.    Cross-Complainants hereby refer to and incorporate by reference as though fully set forth at length herein all of the allegations set forth in the Complaint on file herein, solely for the purpose of illustrating the nature of the claims brought against Cross-Complainants by Plaintiff, and for no other purpose.

## JURISDICTION & VENUE

37.    This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00, exclusive of interest, Cross-claimants are citizens/residents of the State of California, and Cross-Defendant is a citizen of France.

38.    Venue is proper in this Court under 28 U.S.C. § 1391. A substantial part of the events or omissions that give rise to Cross-claimants' claims which occurred in the Central District of California.

## FIRST CAUSE OF ACTION

CROSS-CLAIM: JURY DEMAND

8

**CIVIL THEFT (Cal. *Penal Code* § 496) AGAINST KAMRAN ABBAS-VAHID AND DOES 1 THROUGH 20**

39. Cross-Complaints reallege and incorporate by reference the allegations contained in paragraphs 1-38, inclusive, of this Cross-Claim as though fully set forth at length.

40. As a result of VAHID's conduct as alleged herein, he has violated California *Penal Code* §496.

41. Cal. *Penal Code* §496, provides, "(a) [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170…(c) Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

42. Cross-Defendant VAHID has obtained and received property from KING and KFL, in assets, and in cash, in a manner constituting "theft," as that term is defined in California *Penal Code* §484(a). California *Penal Code* §484(a), provides that: "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall knowingly and designedly, by any false or fraudulently representation or pretense, defraud any other person of money, labor or real or personal property…is guilty of theft."

43. As a direct and proximate result of Cross-Defendant VAHID's civil theft, Cross-Complainant has been damaged in an amount to be proven at trial, but at least $4,470,000.00.

44. In doing the things herein alleged, Cross-Defendant VAHID acted willfully, maliciously, and with the intent to cause injury and harm to Cross-Complainants. VAHID is therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Cross-Defendant, and deter him and others for engaging in similar conduct.

**SECOND CAUSE OF ACTION**
**INDEMNITY**

45.     Cross-Complaints reallege and incorporate by reference the allegations contained in paragraphs 1- 44, inclusive, of this Cross-Complaint as though fully set forth at length.

46.     Should Cross-Complainant's herein be found liable to Plaintiff in the principal action, Cross-Complainant should be entitled to indemnity and contribution from Cross-Defendants, and each of them, under the theory of equitable indemnity commensurate with the jury findings as to the percentage of fault attributable to each of said Cross-Defendants.

47.     If the Plaintiff sustained damages, it was a result of the intentional actions of VAHID.

**THIRD CAUSE OF ACTION**
**CIVIL VIOLATION OF THE CALIFORNIA INVASION**
**OF PRIVACY ACT (Cal. Pen. Code § 637 et seq.)**
**AGAINST KAMRAN ABBAS-VAHID**

48.     Cross-Complaints reallege and incorporate by reference the allegations contained in paragraphs 1-47, inclusive, of this Cross-Complaint as though fully set forth at length.

49.     In 1967 the California legislature enacted the California Invasion of Privacy Act for the express purpose "to protect the right of privacy of the people of this state." *Cal. Pen. Code §630*. The California legislature declared that with the advent of new devices and technology used "for the purposes of eavesdropping upon private communications," the resulting invasion of privacy from the "use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Sections 632 & 637.

50.     Anyone who secretly records any party to a conversation in California may be violating California Penal Code §632, which provides that intentional recording of any confidential communication by means of any electronic amplifying or recording device without the consent of all parties to the communication is guilty of a crime and may be subject to a civil action.

51.     To show violation of California Penal Code §632, a part needs to show nothing

more than the existence of a reasonable expectation by a party to a conversation that no one was listening to the conversation and that the conversation was intentionally recorded by someone through the use of an electronic amplifying or recording device.

52.     KING is informed and believes and thereon alleges that VAHID surreptitiously and intentionally recording several conversations between him and KING while KING and VAHID were in California.

53.     KING never consented to the recordation of any communications she had with VAHID and she believed all communications were confidential.

54.     KING is informed and believes and thereon alleges that Cross-defendant VAHID's surreptitious recordation of communications between the two was contrary to California law and that the recording of the communications forced by VAHID has caused KING tremendous actual damages no less than the minimum jurisdictional limit of this Court.

## RESERVATIONS OF CROSSCLAIMS AND COUNTERCLAIMS

Cross-Complainants hereby reserve the right to amend their Cross-Complaint as permitted by law if investigation discovery, and further information should warrant such amendment. Cross-Complainants further reserve the right to request leave to join other parties as necessary.

## PRAYER FOR RELIEF

1.     For damages in the amount to be proven at trial, but in the amount of at least $4,470,000.00;

2.     For total and complete indemnity for any judgments rendered against Cross-Defendants;

3.     For Treble damages pursuant to Cal. Pen. Code §496(c);

4.     Treble damages of no less than $75,000.00 pursuant to Cal. Pen. Code §637.2;

5.     For attorneys' fees and costs of the suit herein; and

6.     For such other relief that the Court deems just and proper

CROSS-CLAIM: JURY DEMAND                                        11

1

2      Respectfully submitted March 28, 2023.

3

4      DATED: March, 28, 2023            CROSS-CLAIMANT
                                          SARA JACQUELINE KING
5

6                                         _____
                                          / s / Sara J. King
7                                         _____

       Sara Jacqueline King
8                                         In Pro Per

9

10

11     DATED: March, 28, 2023            CROSS-CLAIMANT
                                          KING FAMILY LENDING LLC, a California
12                                        limited liability company

13

14                                        _____
                                          / s / Sara J. King
                                          _____
15                                        Sara Jacqueline King
                                          In Pro Per
16

17

18

19

20

21

22

23

24

25

26

27

28

       CROSS-CLAIM: JURY DEMAND                    12