1  Ronald N. Richards (Cal. State Bar No. 176246)
   LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C.
2  Email:  ron@ronaldrichards.com
   P.O.  Box 11480
3  Beverly Hills, California 90213
   Telephone:  (310) 556-1001
4  Facsimile:   (310) 277-3325

5  Geoffrey S. Long (Cal. State Bar No. 187429)
   LAW OFFICES OF GEOFFREY LONG, A.P.C.
6  Email:  glong0607@gmail.com
   1601 N. Sepulveda Blvd., No. 729
7  Manhattan Beach, California 90266
   Telephone:  (310) 480-5946
8  Facsimile:   (310) 796-5663

9  Attorneys for Plaintiff LDR INTERNATIONAL LIMITED, a British Virgin Island
   corporation

10                     UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

12

13  LDR INTERNATIONAL LIMITED, a          )   Case No. 8:23−cv−00257−DOC (JDEx)
    British Virgin Island corporation;       )
14                                            )   **PLAINTIFF'S MEMORANDUM OF**
                    Plaintiff,                )   **POINTS AND AUTHORITIES IN**
15                                            )   **SUPPORT OF MOTION FOR**
            v.                                )   **SUMMARY JUDGMENT AGAINST**
16                                            )   **DEFENDANTS SARA JACQUELINE**
    SARA JACQUELINE KING, an                  )   **KING AND KING FAMILY**
17  individual, and KING FAMILY              )   **LENDING LLC**
    LENDING LLC, a California limited        )
18  liability company;                       )   **(Fed. R. Civ. P. 56)**
                                             )
19                  Defendants.              )   (Filed concurrently with: 1) Notice of
                                             )   Motion and Motion for Summary
20                                            )   Judgment; 2) Appendix of Evidence and
                                             )   Declarations; 3) Statement of
21                                            )   Uncontroverted Facts and Conclusions of
                                             )   Law; and 4) Notice of Lodging Proposed
22                                            )   Judgment)
                                             )
23                                            )   Date:            October 16, 2023
                                             )   Time:            8:30 a.m.
24                                            )   Courtroom:       10A
                                             )   Judge:           Judge David O. Carter
25                                            )
                                             )   Trial Date:      January 30, 2024
26                                            )
                                             )
27                                            )
                                             )
28  ─────────────────────────────────────────)

# **TABLE OF CONTENTS**

Page

I.   SUMMARY OF THE CASE AND THIS MOTION ............................................ 1

II.   RELEVANT PROCEDURAL HISTORY ........................................................ 4

   A.  The Above-Captioned Action........................................................................ 4

   B.  The Criminal Action ..................................................................................... 5

III.   UNCONTROVERTED FACTS SUPPORTING THIS MOTION ..................... 6

IV.   LEGAL ARGUMENT ...................................................................................... 11

   A. The Uncontroverted Facts and Evidence Establish All Elements of
      Breach of Contract........................................................................................ 11

   B. The Uncontroverted Facts and Evidence Establish All Elements of Fraud .... 12

   C. The Uncontroverted Facts and Evidence Establish All Elements of
      Civil Theft Pursuant to California Penal Code, Section 496 ......................... 16

   D. Plaintiff Has Established All Elements of Its Account Stated Claim ............. 20

V.   CONCLUSION.................................................................................................. 21

LOCAL RULE 11-6.2 CERTIFICATION .................................................................. 22

# TABLE OF AUTHORITIES

**Federal Cases**                                                                       **Page(s)**

*United States v. Blinder*, 10 F.3d 1468 (9th Cir. 1993)...............................................13

*United States v. Garlick*, 240 F.3d 789 (9th Cir. 2020)..............................................13

**California Cases**                                                                     **Page(s)**

*Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825 (1962)..............12

*Bell v. Feibush*, 212 Cal.App.4th 1041 (2013)............................................................17

*Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal.App.4th 915 (2013)......................11

*Cam-Carson, LLC v. Carson Reclamation Authority*, 82 Cal.App.5th 535 (2022).....11

*Lacagnina v. Comprehend Systems, Inc.* 25 Cal.App.5th 955 (2018) ........................18

*Lazar v. Superior Court,* 12 Cal.4th 631 (1996) ..........................................................12

*Leighton v. Forster*, 8 Cal.App.5th 467 (2017)............................................................20

*Misik v. D'Arco*, 197 Cal.App.4th 1065 (2011)...........................................................11

*People v. Gomez,* 43 Cal.4th 249 (2008))....................................................................17

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221 (2014)................20

S*iry Investment, L.P. v. Farkhondehpour*, 13 Cal.5th 333 (2022) ........................18, 19

*Switzer v. Wood*, 35 Cal.App.5th 116 (2019) ..................................................17, 18, 20

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal.App.4th 228 (2002) ...............12

*Zinn v. Fred R. Bright Co.*, 271 Cal.App.2d 597 (1969)..............................................20

*Zoran Corp. v. Chen*, 185 Cal.App.4th 799 (2010)................................................11, 12

**Federal Statutes**                                                                     **Page(s)**

18 U.S.C. § 1343.............................................................................................................13

**California Statutes**                                                                  **Page(s)**

Cal. Penal Code, § 484............................................................................................16, 17

Cal. Penal Code, § 496...................................................................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF THE CASE AND THIS MOTION

Plaintiff LDR International Limited ("Plaintiff" or "LDR") files this memorandum of points and authorities in support of its Motion for Summary Judgment ("Motion") against Defendants Sara Jacqueline King ("Sara King"), a California attorney, and King Family Lending LLC ("King Lending," collectively "Defendants") for breach of written contracts, fraud, civil theft in violation of California *Penal Code,* section 496, and the common count of account stated.  Plaintiff is the victim of a massive fraudulent lending scheme at the hands of Defendants.  Sara King has pled guilty to felony wire fraud and money laundering in a related criminal action filed against her involving, in part, the same fraud she committed against Plaintiff.  As part of that guilty plea, she admitted to most of the uncontested facts supporting this Motion.

Defendants borrowed $10,258,500 from Plaintiff, all evidenced by signed promissory notes, for the purported purpose of then lending those same funds to third-party borrowers.  The purported third-party loans made by King Lending with the money borrowed from Plaintiff were purportedly secured by valuable collateral—jewelry, automobiles, boats, designer handbags, collectible coins, and even guaranteed professional sports contracts—owned by the third parties, and that same collateral also secured the loans made by Plaintiff to King Lending.  It was all a fraud by Defendants which included Defendants providing Plaintiff with falsified/fraudulent third-party loan documents regarding fake third-party borrowers, falsified documents regarding collateral that does not exist, and falsified bank statements and cashier's checks.

Beginning in January 2022 and for approximately ten months thereafter, Plaintiff extended a series of loans to Defendants.  All of the loans were for a similar purpose and took a similar form, to wit—Plaintiff would loan funds to Defendants which Sara King represented Defendants were using to fund loans to third-party borrowers.  The purported loans from Defendants to the third-party borrowers were purportedly secured by various forms of valuable collateral.  The loans from Plaintiff to Defendants in turn

would be secured by the same collateral which purportedly secured the loans from Defendants to the third-party borrowers.

In reality, there were no third-party borrowers, there were no loans from Defendants to any third-party borrowers, and all of the third-party loan documents that Defendants provided to Plaintiff were falsified and fraudulent. Instead, Sara King took all of the funds loaned by Plaintiff and spent that money to fund her lavish lifestyle, for high-roller gambling, and an extravagant highlife in Las Vegas. She even bought a $132,000 Porsche.

In total, Plaintiff extended ninety-seven (97) loans to Defendants, all evidenced by promissory notes signed by Sara King on behalf of King Lending, in the total principal amount of $10,258,500. In connection with each of the 97 loans from Plaintiff to Defendants, Sara King made various fraudulent written and verbal representations regarding the third-party loans, collateral for the third-party loans, and funding of the third-party loans. In connection with each of the purported third-party loans, Defendants provided Plaintiff with purported loan documents between King Lending and the purported third-party borrowers and documents regarding the purported collateral, including title documents, appraisals, photographs, and professional guaranteed sports contracts, with the name and other identifying information of the third-party borrowers redacted. The purported third-party loan documents and collateral documents all were fraudulent and fabricated by Defendants.

Defendants also provided Plaintiff with falsified proof of funding documents purporting to show funding of the third-party loans and falsified bank statements purporting to show payments made by third-party borrowers on the purported third-party loans. Defendants altered the bank statements to show deposits/payments by third-party borrowers that in fact were never made. This was all done to cause Plaintiff to continue funding these non-existent third-party loans and Sara King's lavish lifestyle.

On June 13, 2023, a criminal Information for wire fraud, money laundering, and criminal forfeiture was filed against Sara King by the United States Attorney in the

3

action entitled *United States of America v. Sara Jacqueline King*, United States District Court, Central District of California, Southern Div., Case No. 8:23-cr-00079-DOC ("Criminal Action").  Defendant Sara King waived her right to be indicted by a grand jury.  The Criminal Action involves, *inter alia,* the same acts, occurrences, and fraud that are involved in this civil action filed by Plaintiff.  On June 12, 2023, Sara King entered a plea agreement in the Criminal Action and pled guilty to felony wire fraud and money laundering.  On July 24, 2023, she appeared personally before this Court, Judge David O. Carter presiding, to accept the terms of the plea agreement and plead guilty as set forth therein under penalty of perjury.  Pursuant to her plead agreement, Sara King admitted the factual basis for the plea and Information.

The facts and evidence supporting summary judgment against the Defendants on all causes of action are uncontroverted and this Motion should be granted as set forth in detail herein.

## II.   RELEVANT PROCEDURAL HISTORY

The following brief procedural histories of this action and the Criminal Action are relevant to this Motion.

### A.   *The Above-Captioned Action*

On February 11, 2023, Plaintiff filed its Complaint for breach of contract, fraud, civil theft (Cal. *Penal Code*, § 496), and account stated against Defendants based on diversity jurisdiction pursuant to 18 U.S.C. Section 1332.  (Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment Against Defendants Sara Jacqueline King and King Family Lending LLC ("Separate Statement") at uncontroverted fact ("UF") No. 1.)

The Complaint includes detailed and specific factual allegations that Defendants are alter egos of each other and that King Lending is so organized and controlled by Sara King and its affairs and business are so conducted as to make it a mere instrumentality and alter ego of Sara King, including but not limited commingling of funds and other assets, failure to segregate funds, Sara King's unauthorized diversion of

corporate/business funds to herself for personal/non-business uses, and that Sara King has treated the assets of King Lending as her own.  (UF No. 2.)  The Complaint seeks to hold Sara King liability for the debts and liabilities of King Lending, as well as for her own tortious conduct.  (*Id.*)

A Default by Clerk F.R.Civ.P. 55(a) was entered against King Lending on April 4, 2023.  (UF No. 3.)[1]

Sara King filed her Answer to the Complaint on March 28, 2023.  (UF. No. 4.)

### B.   *The Criminal Action*

On June 13, 2023, the United States Attorney's Office filed a criminal Information for felony wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1957), and criminal forfeiture (18 U.S.C. § 982) against Sara King ("Criminal Information") in this District Court.  (UF No. 5.)  The Criminal Information involves, in part, the same acts, occurrences, and fraud that are involved in the Complaint filed by Plaintiff in this action.  (UF No. 6.)

On June 12, 2023, Sara King entered a Plea Agreement in the Criminal Action ("Plea Agreement").  (UF No. 7.)  Pursuant to the Plea Agreement, Sara King pled guilty to felony wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1957 in connection with, *inter alia*, the fraud she committed on Plaintiff which is the subject matter of this action and admitted to the factual basis of the Criminal Information.  (UF No. 8.)  The factual admissions by Sara King in the Plea Agreement also support the uncontroverted facts set forth in Section III, below.  Among other admissions, she admitted to the loan fraud and that she personally used the funds to fund her lavish lifestyle, gamble in Las Vegas, and purchase a Porsche.  (UF Nos. 8, 22, 23.)

On July 24, 2023, Sara King appeared personally before this Court, Judge David O. Carter presiding, to accept the terms of the Plea Agreement and plead guilty as set

---

[1] Because of King Lending's default, this Motion also serves as the written prove-up against defendant King Lending.

1 | forth therein under penalty of perjury.  (UF No. 9.)

2 | **III.**   <u>**UNCONTROVERTED FACTS SUPPORTING THIS MOTION**</u>

3 | The following uncontroverted facts are set forth in the Separate Statement and are
4 | supported by the declaration and evidence, including the Plea Agreement and Sara
5 | King's admissions therein, attached to the concurrently filed Appendix of Evidence in
6 | Support of Motion for Summary Judgment Against Defendants Sara Jacqueline King
7 | and King Family Lending LLC ("Appendix of Evidence").

8 | At all times relevant hereto, Sara King was an attorney licensed to practice law in
9 | California.  (UF No. 10.)

10 | Sara King owned and operated King Lending which purportedly provided short-
11 | term, high-interest loans to celebrities, professional athletes, and other high-net-worth
12 | individuals secured by the borrower's own assets, including designer handbags,
13 | watches, luxury automobiles, yachts, and earnings from guaranteed professional sports
14 | contracts. (UF No. 11.)

15 | Beginning in or around January 2022 and continuing until at least in or around
16 | January 11, 2023, Sara King, knowingly and with intent to defraud, devised,
17 | participated in, and executed a scheme to obtain money and property from investors of
18 | King Lending by means of materially false and fraudulent pretenses, representations,
19 | and promises, and the concealment of material facts.  (UF No. 12.)

20 | Sara King, through King Lending, recruited investors to purportedly fund the
21 | business's loans.  She told investors that their investments were secured by the same
22 | collateral as the loans.  Sara King promised that she would retain possession of the
23 | collateral and that, in the event a borrower defaulted, she would sell the collateral to pay
24 | the investor in full.  (UF No. 13.)

25 | In reality, during this time period, Sara King never initiated or funded any loan.
26 | Instead of using the investor funds for loans, Sara King used the funds to gamble at Las
27 | Vegas casinos and support her lavish lifestyle.  (UF Nos. 14, 26, 27, 35.)

28 |

Beginning in January 2022 through October 2022, Plaintiff extended a series of loans to King Lending.  All of the loans from Plaintiff to King Lending were for a similar purpose and took the same form, to wit: Plaintiff would loan King Lending moneys which, according to the written and verbal representations by King Lending and Sara King, King Lending would then use to fund loans to third-party borrowers.  Sara King and King Lending represented to Plaintiff, in writing and verbally, that the purported loans from King Lending to the third-party borrowers were secured by various forms of collateral, including but not limited to luxury automobiles, boats, yachts, jewelry, watches, precious metal coins, and the earnings from guaranteed professional sports contracts.  The loans from Plaintiff to King Lending would in turn be secured by the same collateral which purportedly secured the loans from King Lending to the third-party borrowers.  (UF No. 15.)

Each of the loans from Plaintiff to King Lending was evidenced by a Promissory Note, prepared by Sara King, payable by King Lending, as maker, to Plaintiff, as payee. In each of said Promissory Notes, Sara King and King Lending expressly represented that the loan from Plaintiff to King Lending was for purpose of making the third-party loan as follows: "Maker is a California Finance Lender and is using all monies to fund a loan. Collateral for said loan is: [collateral identified]."  All of these Promissory Notes are identical other than the date, dollar amount, and collateral identified in paragraph 7. (UF No. 16.)

Each of the Promissory Notes from King Lending as maker to Plaintiff as payee contains an attorneys' fee clause in the event collection on the note is required, governing law provision applying California law, and default provisions.  (UF No. 17.)

In total, Plaintiff made ninety-seven (97) loans to King Lending in the total principal amount of $10,258,500 which were purportedly secured by luxury cars, jewelry, watches, antique precious metal coins, designer handbags, boats, yachts, and earnings from guaranteed sports contracts with representations regarding salary and bonus amounts.  In connection with each of the 97 loans from Plaintiff to King Lending,

1  Sara King made various intentionally false written representations regarding the third-

2  party loans, collateral for the third-party loans, and funding of the third-party loans.

3  (UF Nos. 12-14, 18.)

4      In connection with the purported third-party loans which the moneys loaned by

5  Plaintiff to King Lending were purportedly being used to fund, Sara King and King

6  Lending provided Plaintiff and its representative Laurent Reiss ("L.R.") with fraudulent

7  loan documents between King Lending and the purported third-party borrowers, which

8  typically included a Secured Promissory Note and Security Agreement with the name

9  and other identifying information of the third-party borrower redacted by Defendants,

10  and which Sara King and King Lending represented to Plaintiff were the third-party

11  loan documents.  These purported third-party loan documents that were provided to

12  Plaintiff by Defendants are fraudulent and fabricated because there were no such third-

13  party loans by King Lending to any third-party.  (UF Nos. 12-14, 19.)

14      In connection with many of the purported third-party loans which the moneys

15  loaned by Plaintiff to King Lending were purportedly being used to fund, Sara King and

16  King Lending provided Plaintiff and L.R. with fraudulent and fabricated documents

17  regarding the collateral purportedly securing said loans, including but not limited to title

18  documents, appraisals, and photographs, with name and other identifying information of

19  the third-party borrower redacted, which Sara King and King Lending represented to

20  Plaintiff was the collateral securing the third-party loans and, in turn, securing the loans

21  from Plaintiff.  (UF No. 20.)  In reality, there was no collateral because there were no

22  third-party loans.  (UF Nos. 12-14.)

23      In connection with the purported third-party loans which the moneys loaned by

24  Plaintiff to King Lending were purportedly being used to fund and which were secured

25  by guaranteed professional sports contracts, Sara King and King Lending provided

26  Plaintiff and L.R. with information regarding the alleged guaranteed sports contracts,

27  including salary and bonus information and a redacted NFL Player Contract which Sara

28

King and King Lending fraudulently represented to Plaintiff was one of the guaranteed contracts that secured one of King Lending's third-party loans.  (UF No. 21.)

In connection with many of the purported third-party loans which the moneys loaned by Plaintiff to King Lending were purportedly being used to fund, Sara King and King Lending provided Plaintiff and L.R. with purported proof of funding documents which typically consisted of a cashier's check from King Lending with the purported third-party borrower's name redacted which Sara King and King Lending represented to Plaintiff were evidence of the third-party loans being funded by King Lending.  Because the payee names were redacted, Plaintiff could never verify that the funds were actually loaned to the third-party borrowers.  These "proof of funds" documents do not evidence payment to any third-party borrowers because there were no such loans and Sara King and King Lending intentionally provided Plaintiff with these fraudulent documents. (UF Nos. 12-14, 22.)

Sara King and King Lending also fraudulently represented to Plaintiff and L.R. that the amount of $6,331,580 received by King Lending in loan repayments from third-party borrowers had been "redeployed" to fund purported additional loans between King Lending and third-party borrowers, instead of being repaid to Plaintiff.  In fact, there were no payments made by any third-party borrowers because there were no third-party borrowers or loans to third-party borrowers. (UF Nos. 12-14, 23.)

Sara King and King Lending engaged in a massive fraud on Plaintiff.  (UF Nos. 12-13.)  There were no third-party loans from King Lending to any third-party borrowers.  (UF Nos. 12-14, 24.)  Sara King and King Lending falsified and fabricated each of the purported third-party loans and all of the documents regarding those loans, funding of the third-party loans, and collateral for those loans.  (UF Nos. 12-14, 25.)

Sara King spent the majority of the funds loaned by Plaintiff to King Lending to gamble in Las Vegas, fund an extravagant lifestyle, and for other personal uses.  (UF Nos. 14, 26, 35.)  She used $132,156.09 to purchase a Porsche Taycan for herself.  (UF No. 27.)

Plaintiff only made the loans to King Lending because of the false representations made by Sara King and fraudulent third-party loan documents that L.R. and Plaintiff were provided by King Lending and Sara King.  Plaintiff would not have made any loans to King Lending but for the fraudulent representations by Sara King and third-party loan documents which ended up being fabricated, including but not limited to the third-party promissory notes, documents regarding collateral, and proof of fundings documents, that Plaintiff and L.R. were provided by King Lending and Sara King.  (UF No. 28.)

In reliance on the representations made by Sara King and King Lending to Plaintiff and L.R., including the fraudulent documents provided to Plaintiff and L.R., emails from Sara King, and phone calls with Sara King, Plaintiff did fund ninety-seven loans to King Lending.  The total amount of principal loaned by Plaintiff to King Lending is $10,258,500.  (UF No. 29.)

Plaintiff has performed all obligations required of it in connection with each of the ninety-seven loans from Plaintiff to King Lending, including but not limited to loaning King Lending the principal sum of $10,258,500.  (UF No. 30.)

All of the ninety-seven loans from Plaintiff to King Lending have matured, are unpaid, and are in default.  (UF No. 31.)

In connection with Plaintiff's demands for payment prior to filing this action, King Lending paid Plaintiff $2,000,000 against the accrued interest owed to Plaintiff on the loans.  (UF No. 32.)

Principal on the ninety-seven loans in the amount of $10,258,500 is owed by King Lending to Plaintiff.  (UF No. 33.)  Unpaid prejudgment interest pursuant to the Promissory Notes on the ninety-seven loans, from the dates of funding through September 30, 2023, in the amount of $1,900,000 is owed by King Lending to Plaintiff. (UF No. 34.)

## IV.   **LEGAL ARGUMENT**

### A.   ***The Uncontroverted Facts and Evidence Establish All Elements of Breach of Contract***

Plaintiff's first claim for relief is for breach of the written promissory notes evidencing the loans by Plaintiff to King Lending.  Plaintiff also sued Sara King on this claim as King Lending's alter ego.

The elements of a claim for breach of written contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff.  *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal.App.4th 915, 921 (2013).  Here, Plaintiff has established each element based on the uncontroverted facts and evidence.

The promissory notes between Plaintiff and King Lending are valid and enforceable contracts.  Pursuant to those promissory notes, Plaintiff lent King Lending $10,258,500 and the promissory notes are evidence of that indebtedness.  King Lending is in default on all of the promissory notes, which have all matured and are unpaid and in default.  As a result, Plaintiff has been damaged in the principal amount of $10,258,500, plus prejudgment interest through September 30, 2023, in the amount of $1,900,000.  Therefore, the undisputed facts and evidence clearly demonstrate that King Lending is liable for breach of the written promissory notes.

In addition, Plaintiff's Complaint seeks to hold Sara King liable for breach of contracts—the promissory notes—as King Lending's alter ego.  Alter ego is available on a claim for breach of contract.  *Cam-Carson, LLC v. Carson Reclamation Authority*, 82 Cal.App.5th 535, 558 (2022); *Misik v. D'Arco*, 197 Cal.App.4th 1065, 1075-76 (2011) (alter ego used to add defendant as an additional judgment debtor for breach of contract).

The alter ego test encompasses a host of factors, including but not limited to, commingling of funds and other assets; the unauthorized diversion of corporate funds or assets to other than corporate uses; and the treatment by an individual of the assets of

the corporation as his own.  *Zoran Corp. v. Chen*, 185 Cal.App.4th 799, 811–812 (2010); *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838–840 (1962).  This list of factors is not exhaustive and the factors may be considered along with others under the circumstances of each case.  *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc*., 99 Cal.App.4th 228, 245 (2002).

Here, Sara King owned and operated King Lending.  She devised the fraud scheme that it employed.  She has admitted, under penalty of perjury in her guilty plea in the Criminal Action for felony wire fraud and money laundering, that she used the moneys that were loaned to King Lending to fund her extravagant lifestyle, gamble in Las Vegas, and purchase a Porsche.  She used King Lending, and the money it stole from Plaintiff, as her personal piggybank to live a high-end criminal life.  Not only did Sara King admit these facts in her guilty plea, documents produced by JPMorgan Chase Bank for Sara King and King Lending's accounts show extensive ATM withdrawals and card purchases at casinos from both accounts.  (UF Nos. 14, 26.)  Those bank records also show extensive transfers from King Lending's account into Sara King's personal account.  (UF No. 35.)

This is a clear-cut case of alter ego liability, and Sara King is also personally liable for King Lending's breach of contracts.

**B.**     **_The Uncontroverted Facts and Evidence Establish All Elements of Fraud_**

The elements of Plaintiff's fraud claim are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage.  *Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996).  Here, all of these elements are easily proven against Sara King and King Lending.

Sara King has pled guilty in the Criminal Action to wire fraud, the elements to which are: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements

made or facts omitted as part of the scheme were material, i.e., they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, deceive, and cheat; and (4) defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.  (18 U.S.C. § 1343; *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2020) (citing *United States v. Blinder*, 10 F.3d 1468, 1472 (9th Cir. 1993)).

Sara King admitted to the following facts and fraudulent acts in the Criminal Action:

- Sara King operated King Lending which purportedly provided short-term, high-interest loans to celebrities, professional athletes, and other high-net-worth individuals secured by the borrower's own assets, including designer handbags, watches, luxury automobiles, yachts, and earnings from guaranteed professional sports contracts.  (UF No. 11.)

- Beginning in or around January 2022 and continuing until at least in or around January 11, 2023, Sara King, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain money and property from investors of King Lending, including Plaintiff, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  (UF No. 12.)

- Sara King, through King Lending, recruited investors to purportedly fund the business's loans.  She told investors that their investments were secured by the same collateral as the loans.  Sara King promised that she would retain possession of the collateral and that, in the event a borrower defaulted, she would sell the collateral to pay the investor in full.  (UF No. 13.)

- In reality, during this time period, Sara King never initiated or funded any loan. Instead of using the investor funds for loans, Sara King used the funds to gamble at Las Vegas casinos and support her lavish lifestyle.  (UF No. 14.)

In addition to her admission in the Criminal Action, Sara King and King Lending engaged in the following fraudulent conduct and representations against Plaintiff:

- Provided Plaintiff with falsified and fraudulently created third-party loan documents, including promissory notes and security agreements, and represented to Plaintiff, in writing and verbally, that those were the loan documents for the loans between King Lending and the third-parties.  (UF No. 19.)

- Provided Plaintiff with falsified and fraudulently created documents regarding the collateral for the purported third-party loans by King Lending, including title documents, appraisals, and photographs, which Sara King and King Lending represented to Plaintiff was the collateral securing the third-party loans.  (UF No. 20.)

- Provided Plaintiff with false and untrue information regarding the alleged guaranteed sports contracts which were the purported collateral for some of the King Lending third-party loans, including salary and bonus information and an NFL Player Contract, which Sara King and King Lending represented to Plaintiff was the collateral securing some of the third-party loans.  (UF No. 21.)

- Provided Plaintiff with fraudulent proof of funding documents, including redacted cashier's check from King Lending, which Sara King and King Lending represented to Plaintiff were evidence of the third-party loans being funded by King Lending.  (UF No. 22.)

- Represented to Plaintiff that the amount of $6,331,580 received by King Lending in loan repayments from third-party borrowers had been "redeployed" to fund purported additional loans between King Lending and third-party borrowers, instead of being repaid to Plaintiff.  (UF No. 23.)

The _true facts_ are as follows:

- There were no third-party loans between King Lending and any third-party borrowers.  (UF Nos. 14, 24.)

- Sara King falsified and fraudulently created the purported loan documents between King Lending and the non-existent third-party borrowers.  (UF Nos. 14, 19, 24.)

- Sara King falsified and fraudulently created the documents regarding the collateral securing the purported loans by King Lending to the third-party borrowers and there was no collateral because there were no third-party loans. (UF Nos. 14, 20, 24.)

- There were no guaranteed sports contracts securing any of the purported loans by King Lending to third-party borrowers because there were no third-party loans.  (UF Nos. 14, 21, 24.)

- The proof of funding documents, *i.e.,* cashier's checks, provided by Sara King to Plaintiff did not fund any third-party loans because there were no loans by King Lending to any third-party.  (UF Nos. 14, 22, 24.)

- There had been no repayments to King Lending by any third-party because there were no third-party loans and King Lending was not repaid $6,331,580 and did not "redeploy" those moneys to fund additional loans between King Lending and third-party borrowers because there were no third-party loans. (UF Nos. 14, 23, 24.)

- Sara King used the money that was lent by Plaintiff to King Lending to fund her extravagant lifestyle, gamble in Las Vegas, and purchase a Porsche for herself.  (UF Nos. 14, 26, 27.)

Plaintiff only made the loans to King Lending because of the materially false representations made by Sara King and the fraudulent third-party loan documents that Plaintiff was provided by King Lending and Sara King.  (UF No. 28.)  Plaintiff would not have made any loans to King Lending but for the representations by Sara King and third-party loan documents which ended up being fabricated, including but not limited to the third-party promissory notes, documents regarding collateral, and proof of fundings documents, that Plaintiff and L.R. were provided by King Lending and Sara

15

King.  (UF No. 28.)  In reliance on the representations made by Sara King and King Lending to Plaintiff, including the fraudulent and fabricated documents provided to Plaintiff, emails from Sara King, and phone calls with Sara King, Plaintiff did fund ninety-seven loans to King Lending in the total amount of $10,258,500.  (UF No. 29.)

Therefore, as a direct result of the materially false representations made by Sara King and King Lending to Plaintiff, Plaintiff has been damaged in the amount of $10,258,500.  (UF Nos. 29, 30, 33.)

### C. The Uncontroverted Facts and Evidence Establish All Elements of Civil Theft Pursuant to California Penal Code, Section 496

Plaintiff's third claim for civil theft in violation of California *Penal Code,* section 496(a), is established by the uncontroverted facts and evidence, including but not limited to Sara King's admissions in the Criminal Action.  This is a prototypical case of civil theft.

California *Penal Code*, section 496 ("Section 496") subdivision (a), makes receiving property "that has been obtained in any manner constituting theft" a criminal offense punishable by imprisonment.  Section 496(c) provides for a civil right of recovery of treble damages and attorneys' fees for a person injured as a result of a violation of Section 496(a).

Section 496(a) provides, "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment …."  (*Penal Code,* § 496(a).)  Section 496(c) provides that any person "who has been injured by a violation of [Section 496(a)] ... may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."  (*Penal Code,* § 496(c).)

*Penal Code*, section 484(a), defines "theft" for purposes of Section 496 as follows:  "Every person who shall feloniously steal, take, carry, lead, or drive away the

personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property … and thereby fraudulently gets or obtains possession of money … of another, is guilty of theft." (*Penal Code*, § 484(a).)  The phrase "any manner constituting theft" in Section 496(a) includes theft by false pretense.  *Bell v. Feibush*, 212 Cal.App.4th 1041, 1043 (2013) (Section 496 applies in the context of a loan scam) (citing *People v. Gomez,* 43 Cal.4th 249, 255, fn. 4 (2008)).

In *Bell,* the defendant induced plaintiff to loan him over $200,000 based on the false pretense that defendant owned the trademark "Toughlove" and he needed the money to settle a lawsuit over his interests in what he called the "toughlove" industry. Defendant Feibush's representations were lies and the asserted "toughlove" enterprise a scam.  *Bell,* 212 Cal.App.4th at 1044.  When plaintiff asked to be repaid, defendant gave her various excuses and never repaid the loans.  The court in *Bell* concluded, "[t]he evidence established that [defendant] violated section 496(a) not only by receiving property from [plaintiff] by false pretense, but also by withholding that property when she asked for it back." *Id*. at 1049.

In *Switzer v. Wood*, 35 Cal.App.5th 116 (2019), plaintiff and defendant, individually or through shell companies, were in the business of selling medical devices. They formed a limited liability company ("LLC") and joint venture arrangement was agreed to whereby income from their business enterprises would flow to the LLC, then after certain reimbursements and expenses were paid, profits would be distributed equally between plaintiff and defendant.  Plaintiff alleged that soon after the business venture began, defendant deceitfully took possession of, converted, and withheld for himself large sums of money or income belonging to plaintiff or the LLC and also converted and sold valuable property belonging to plaintiff and kept the profits for himself. *Id*. at 121.  Plaintiff alleged claims for, *inter alia,* violation of Section 496 and sought treble damages and attorneys' fees.  The jury found in favor of plaintiff, but the

1  trial court denied treble damages and attorneys' fees.  The Court of Appeal reversed,

2  finding the trial court erred in refusing to award treble damages.  *Id.* at 125.

3      The *Switzer* Court held that Section 496 is clear and unambiguous and all that is

4  required for civil liability and an award of treble damages is a finding of a violation of

5  Section 496(a).  *Id.* at 126.  "While section 496(a) covers a spectrum of impermissible

6  activity relating to stolen property, the elements required to show a violation of section

7  496(a) are simply that (i) property was stolen or obtained in a manner constituting theft,

8  (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant

9  received or had possession of the stolen property."  *Id.* (citing *Lacagnina v.*

10 *Comprehend Systems, Inc.* 25 Cal.App.5th 955, 970 (2018)).  As to the broad scope of

11 Section 496, the court held, "[a] violation of section 496(a) may, by its own terms, relate

12 to property that has been 'stolen' or 'that has been obtained *in any manner constituting*

13 *theft* or extortion.' (§ 496(a), italics added.)  As reflected in [*Bell*], the issue of whether

14 a wrongdoer's conduct in any manner constituted a 'theft' is elucidated by other

15 provisions of the Penal Code defining theft, such as Penal Code section 484."  *Switzer,*

16 35 Cal.App.5th at 126.  "Theft," as defined in *Penal Code,* section 484, includes

17 larceny, embezzlement, and theft by false pretense.  *Id.*

18     The California Supreme Court recently affirmed the holdings of *Bell* and *Switzer*

19 applying Section 496 to theft by false pretense.  S*iry Investment, L.P. v.*

20 *Farkhondehpour*, 13 Cal.5th 333 (2022).  In *Siry*, the California Supreme Court

21 reversed a Court of Appeal opinion which held that Section 496 does not apply to

22 "theft-related tort" that does not involve "trafficking in stolen property."  In that case, a

23 limited partner brought an action against the partnership's general partner, three trusts

24 that were the other limited partners, and the principals and trustees of such other

25 partners, for, *inter alia,* violation of Section 496 for fraudulent diversion of the

26 partnership's cash distributions.  The partnership business was to renovate and lease

27 mixed-use space in downtown Los Angeles.  Three of the partners secretly formed

28 another entity and caused tenants to pay rent to that entity, diverting income away from

1  the partnership and reducing distributions.  They kept plaintiff unaware of the

2  underpayments by misrepresenting the building's rental income and expenses,

3  effectively lying to plaintiff about what the cash distributions should have been.  *Id.* at

4  339-340.

5        The Court of Appeal wrongly held that Section 496 does not apply to "theft-

6  related tort" where "the underlying conduct did not involve trafficking in stolen

7  property, but rather the improper diversion of a limited partnership's cash distributions

8  through fraud, misrepresentation, and breach of fiduciary duty." *Id.* at 358.  The

9  California Supreme Court reversed, adopting the holdings and analyses of *Bell* and

10  *Switzer.  Id.* at 361.

11       We also find that section 496(c) applies concerning the conduct at issue in
     the present case. The unambiguous relevant language covers fraudulent

12       diversion of partnership funds. … [¶] … To prove theft, a plaintiff must
     establish criminal intent on the part of the defendant beyond "mere proof

13       of nonperformance or actual falsity." (*People v. Ashley* (1954) 42 Cal.2d
     246, 264, 267 P.2d 271.) This requirement prevents "'[o]rdinary

14       commercial defaults'" from being transformed into a theft. (*Id*., at p. 265,
     267 P.2d 271.)  If misrepresentations or unfulfilled promises "are made

15       innocently or inadvertently, they can no more form the basis for a
     prosecution for obtaining property by false pretenses than can an innocent

16       breach of contract." (*Id.*, at p. 264, 267 P.2d 271.) In this case, the record
     appears consistent with a conclusion that defendants acted not innocently

17       or inadvertently, but with careful planning and deliberation reflecting the
     requisite criminal intent.

18  *Id.* at 361-362.

19        Here, as set forth in detail in Sections III and IV.B, Sara King and King Lending

20  violated *Penal Code,* section 496(a), by obtaining $10,258,500 from Plaintiff in a

21  manner constituting theft.  They obtained Plaintiff's property by false and fraudulent

22  pretenses and by feloniously stealing said property.  Sara King has pled guilty to felony

23  wire fraud in the Criminal Action.  She obtained $10,258,500 from Plaintiff by false and

24  fraudulent pretenses—lying about King Lending loaning the funds to third-parties, lying

25  that the loans were secured by valuable collateral, lying that the third-party loans were

26  funded, lying that over $6,000,000 was repaid and redeployed, falsely and fraudulently

27  creating fake third-party loan documents, falsely and fraudulently creating documents

28  regarding the collateral for the loans, and falsely and fraudulently created documents

purporting to show the funding of the third-party loans.  Defendants knew the property was obtained in a matter constituting theft.  This conduct is egregious, tortious, fraudulent, and criminal.  This is the exact type of case that Section 496 was enacted to address and deter.

As such, Plaintiff is entitled to treble damages pursuant to Section 496(c) in the amount of $30,775,500 against both Defendants, jointly and severally.  Treble damages are mandatory once a violation of Section 496 is established.  *Switzer, supra,* 35 Cal.App.5th at 126.  Plaintiff is also entitled to the recovery of attorneys' fees by appropriate motion.

### D. *Plaintiff Has Established All Elements of Its Account Stated Claim*

Although Plaintiff believes it has established that there is no triable issue of material fact as to each element for breach of written contracts against both Defendants (with alter ego against Sara King), in the unlikely event the Court disagrees, Plaintiff has also pled a claim for account stated.

The elements for the common count of account stated are: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due."  *Zinn v. Fred R. Bright Co.*, 271 Cal.App.2d 597, 600 (1969); *Leighton v. Forster*, 8 Cal.App.5th 467, 491 (2017).

Plaintiff lent King Lending $10,258,500.  There is an express agreement between Plaintiff and King Lending as to the amount due of $10,258,500.  King Lending promised to pay Plaintiff the amount due.

In addition, Sara King is the alter ego of King Lending and, therefore, is also liable for it on the claim of account stated.  Alter ego is available on a common count claim.  *See, Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221 (2014) (alter ego applicable to common count of money had and received).

1       Therefore, judgment should also be entered on the fourth claim for relief of

2 account stated against Defendants in the amount of $10,258,500.

3 **V.**   **CONCLUSION**

4       There are no triable issues of material fact concerning Plaintiff's claims for

5 breach of contract, fraud, civil theft in violation of California *Penal Code,* section 496,

6 and account stated, and this Motion for Summary Judgment against defendants Sara

7 Jacqueline King and King Family Lending LLC should be granted in its entirety.

8

9 DATED: September 11, 2023         LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C.

10

11                          By:   ___/ s /  Ronald N. Richards_____

12                               Ronald N. Richards
                              Attorneys for Plaintiff LDR

13                               INTERNATIONAL LIMITED

14 DATED: September 11, 2023         LAW OFFICES OF GEOFFREY LONG, A.P.C.

15

16

17                          By:   ___/ s /  Geoffrey S. Long_____
                              Geoffrey S. Long

18                               Attorneys for Plaintiff LDR
                              INTERNATIONAL LIMITED

19

20

21

22

23

24

25

26

27

28

## <u>LOCAL RULE 11-6.2 CERTIFICATION</u>

The undersigned, counsel of record for Plaintiff LDR International Limited, certifies that this brief, including headings, footnotes, and quotations but excluding the caption, the table of contents, the table of authorities, the signature block, this certification, and any indices and exhibits contains 6,317 words, which complies with the word limit of Local Rule 11-6.1.

DATED: September 11, 2023          LAW OFFICES OF GEOFFREY LONG, A.P.C.


By:  ___/ s /  Geoffrey S. Long_____
         Geoffrey S. Long
         Attorneys for Plaintiff LDR
         INTERNATIONAL LIMITED